Mr. Gilbreth? Yes, good morning, Your Honors. May it please the Court. I'd like to start by addressing the jury trial issue and specifically starting or beginning with our Rule 39A request for a jury trial on the entire case. Now, under this Court's precedent, when a party makes an untimely request for a jury trial under Rule 39, then the District Court should grant that request unless there's a strong and compelling reason not to do so. There was no such strong and compelling reason in this case. The first, there was no evidence of any prejudice to the appellee, HAT. They haven't been able to articulate any real prejudice to their ability to try the case. And your position is Hoover would not be required to offer any explanation or reason for its two-and-a-half-year delay in asking? I'm sorry, Your Honor, my hearing's a little bad. Under your explanation, now, Hoover is not required to offer up any reason for its two-and-a-half-year delay? Oh, yes, we do have an explanation for that, and I'll jump to it now. I was going to cover it in a moment, but I'll jump to it now. So, and it has to do with the way this request for a jury trial played out. So, as the Court, I think, probably knows from reading the briefs, Hoover, I mean, pardon me, HAT, filed a motion for leave to file a second amended answer containing defenses of waiver and ratification. The District Court very quickly denied that motion, and then the day before the District Court granted summary judgment, it turned to Spontag, granted the motion for leave to file a second amended answer which contained two new affirmative defenses, ratification and waiver. And, of course, the next day the Court granted summary judgment. So, at that point, we were entitled, once they asserted, they were granted leave to assert those affirmative defenses. We had 14 days to request a jury trial. That didn't happen because then the judge granted summary judgment the next day, the case went up on appeal. We couldn't request a jury trial. It would have been futile. The cases are all addressed in our briefing. So, then the case is remanded, and we immediately file a request for a jury trial. HAT files a motion to strike, and we say, come back and say, wait a minute, Your Honor, we are entitled to a jury trial under Rule 38 and, for reasons I'll cover in a moment, and if you're going to try to have a jury trial on just those two affirmative defenses, it makes sense to have a jury trial under Rule 39 on the whole case. And so, in that response we filed back in 2020, we said, Judge, give us a trial on the whole case under Rule 39 and the alternative under Rule 38. But that's our explanation of what happened and why it happened, and mainly it has to do with the way the case procedurally played out with the first appeal. Well, don't most plaintiffs ask for a jury trial in their first complaint? Yes, that's true, Your Honor. I think at the time we felt like the case was simpler. There weren't as many issues that seemed to be directly in the wheelhouse of a jury, questions like waiver and ratification, and then ultimately, after this court's remand, a question of what the party's true intentions were with respect to the confidentiality agreement and whether items had to be marked. So that's the explanation for why we didn't do it immediately. The case just became more complex as they added those new affirmative defenses. There's no evidence, the court should have granted it too, because there was no evidence that there would be any disruption to the district court's schedule. I mean, the court had several cases that were set for trial the same week. Ours ended up not going, but the case that did go to trial that week, that July 6th, it was tried to a jury and it was a three-day trial just like ours. So, asking for a jury demonstrably could not have prejudiced or the district court had disrupted its schedule. So, there is still the question of whether there were legitimate issues of fact to be tried, right, before a jury? Because if there were not, then you wouldn't need a jury. That's true. That's true, Your Honor. That's true. And we do say that, I've already covered it, but the issues here are tried, the type that are best tried to a jury. So, Rule 39 would have been appropriate for that reason. The fact of delay is overcome by the lack of any prejudice to either have or the district court, as I've discussed. So, ultimately, this court has said, I believe, in the Pinemont Bank case, it said, look, just because somebody was tardy in requesting a jury trial, you can't punish them for that reason. We're talking about a constitutional right here. And so, that's not the way the law works. You grant it to them. It's a constitutional right to a jury trial unless you fail this five-factor test, which we do not fail. It wouldn't have caused any problems to grant us a jury trial. So, for all those reasons, the district court abused its limited, very limited discretion in denying our request for a jury trial on the entire case. If the court doesn't agree, we were definitely entitled to a jury trial on the affirmative defenses of waiver and ratification. First off, as I explained just a moment ago, that the request was definitely timely. It was made within 14 days after the case was remanded to the district court, and based on the way the timing in the district court before the appeal, we couldn't have requested a jury trial. So, we were just put on hold until the remand, in which, as soon as that happened, we instantly requested a jury trial. Of course, the next question on Rule 38 is, did HATS waiver and ratification defenses, were they really new? Yes, they definitely injected new issues into the case. As we have explained in our briefing, there was nothing in their prior answers that was similar to waiver or ratification or could have relied on the same type of evidence. They're only affirmed— It didn't involve facts that were actually raised in connection with your claims? No, and we go into that, I think, more in our reply brief, Your Honor, that our claims did not require us to disprove waiver or ratification. Waiver and ratification were just a non-issue. They were just in a box somewhere until they opened that box, and they became new issues. Well, I mean, it's one thing to label something an issue, but my question goes more to whether or not those facts were facts that were necessarily raised in connection with your claims, the facts connected to the defenses of waiver and ratification. Absolutely, Your Honor, and that's the entirely correct analysis, and so that's why we spent time in our briefing saying, no, those facts just were not in the case. The question of whether we knew about and said, eh, no problem, or the question of whether we knew about and said, yeah, go ahead, basically the same defenses. That was not in the case until they raised those affirmative defenses. In fact, their motion for leave to file the second amended answer, raising those defenses, said, hey, these are new defenses based on new evidence. Well, it is a new defense that they had raised, and it's an affirmative defense, so they're required to raise affirmative defenses. It just doesn't necessarily translate into new facts. They themselves said it's new evidence that causes us to raise these. Now, setting aside the jury trial issue for a moment, I'm done with that, but let me explain to the court another reason why I think the court should remand this case for a new trial, and that is that the district court simply did not decide the issue that was required to be decided by this court's ruling in the first appeal. The court's ruling in the first appeal was that this confidentiality agreement was ambiguous, which required a jury to determine the true intentions of the parties, not to apply rules of construction, but listen to the testimony. What did they really intend? Did it require marking of items or not? Well, the district court just didn't base its ruling on any evidence of the findings of fact. The court considered the testimony of hat representative Brian McNay and found his testimony more credible than the testimony of Hoover representative Alex Hoover. That's the kind of thing you would see if the court had decided this based on the evidence of the intentions of the parties, but instead, if you look at conclusions of law 9 through 15, the court just reapplied basic rules of construction that are applied when you're construing a non-ambiguous agreement. This court had already said the thing is ambiguous. You've got to look at it a different way. You've got to hear what the parties intended. District court didn't do that, so we think the court should order a new trial because disputed issues of fact like this should be decided by a finder effect in the first instance, as we explain in our reply brief, and we say, you know, maybe I haven't found authority for it. Perhaps the court could do its own de novo review of the evidence and make its decision on that, but we think the better result would be to remand for a finder effect to make that decision in the first instance, which never happened, which leads us to the last issue that I'll cover today, and that is, of course, their waiver and ratification defenses, and we don't think the court gets to the evidence on those because I just feel extremely confident in our position that we were entitled to a jury trial, if nothing else, on those defenses, and there is not a single leak in our argument on that issue, so the court doesn't even have to get to the evidence, but if it happened to, we say that, and we've explained in our briefing why there's no substantial evidence that Hoover adopted or confirmed Hatt's disclosure to our competitor, Office Essential, with knowledge of all material facts of our product, and said, that's okay, you can take your business over to them, use my product, and I don't need your business. There's no evidence of that, so that brings us to the last issue is the Uniform Trade Secrets Act, and I had intended to say I would yield the balance of my time on that issue because I feel like we briefed it very thoroughly. If there are any questions the court has about it, I'll be happy to answer them. I'll just say in parting that it seems to me that the Apoese argument, you could boil it down to, you don't have a trade secret. I mean, if it's a fungible widget, then you don't have a trade secret. I mean, that's actually, that's my position. Sure, if you don't have it, it's not. If it's a fungible widget, maybe you don't have a trade secret. This is not a fungible widget. This has been the ideas and concepts of my client built into it, so I would keep that in mind when they try to argue that this thing is not secret. It's on the market and all of those things, but again, if no questions, I'll yield the balance of my time to respond to them. Okay, you have time for rebuttal. Thank you, sir. Ms. Dallas. May it please the court. Appellant Hoover Panel Systems in its bid to get yet another bite at the Apple would essentially have this court strip the district court of all its discretion. The discretion to manage its trial docket when Hoover delayed for years in seeking a jury trial and the discretion to weigh disputed evidence and credibility of witnesses in resolving issues of contractual intent, waiver, ratification, and trade secret misappropriation. The discretion to evaluate the evidence and testimony elicited during a three-day bench trial resides with the district court, which considered documentary evidence, physical demonstrations of the power beam at issue, and the testimony of the witnesses. The district court was best positioned to judge the credibility of those witnesses and the evidence to resolve conflicts, and it did not clearly err in doing so. This court should affirm for three reasons. First, Hoover was not entitled to a jury trial under either Rule 38B or 39B. Hoover waived its right to a jury trial by not making a timely demand in the first instance. The second amended answer did not raise new issues or revive their deadline to demand a jury under Rule 39, excuse me, under Rule 38, and there were filed in May of 2021 under 60 days before the then-scheduled July 6th trial date. Mr. Gilbert says that waiver and ratification were raised as new issues. Can you walk us through whether that's so? You've stated to the contrary, right? I'd be happy to, Your Honor. The issues of fact that would have supported the legal concepts of waiver and ratification and those defensive theories were actually in the case from the very beginning. Were those theories placed before the court? Were those theories led or stated in some way? That's an important question, Your Honor. And Rule 38 deals with issues of fact, not theories. So, if there are new defensive theories that don't raise an issue of fact . . . Okay. I mean, my question was really a yes or no question. Were they raised as waiver and ratification, or was it just the facts that were out there somewhere? The waiver was actually pled in the state court answer, and I do have a record site on that. That's Record 55. So, the state court answer included waiver, and then the issues and the facts related to waiver and ratification were actually part of . . . that would have supported waiver and ratification were actually part of plaintiff's affirmative elements on the secret misappropriation claim. The plaintiffs had to prove that the prototype power beam at issue here was kept . . . that they maintained and kept secrecy over it as part of their affirmative claim. So, the facts that would support waiver that they didn't require . . . didn't require express compliance with the terms of the confidentiality agreement because they didn't keep it secret are the same facts that plaintiff had to prove in their affirmative trade secret misappropriation claim. There's many other instances of the facts supporting waiver and ratification being part of . . . being part of the case long before there was an effort to conform the pleadings with the evidence. Who . . . Hatt raised it in its summary judgment reply after Judge Cummings asked the parties to and the like. Hatt again raised the issue of waiver and ratification and then also moved for leave to formally amend to conform the pleadings to add those defensive theories that were already supported by the evidence in the case. And so, with how prevalent waiver and ratification were in the case, I think the district court was correct to allow the amendment and correct that it did not restart the deadline to file a jury demand because it didn't introduce new facts and evidence. And so, you know, I don't think that the district court . . . I'm sorry, I don't think that this court necessarily has to reach . . . reach the question of whether the demand was timely on remand because it was never . . . it was never re-invoked when the second amended answer was filed. I will note the distinguishing factors between this case and the case cited in Appellant's brief for the proposition that they could wait until after the appeal . . . after the first appeal of this case until the remand and that the remand by this court would trigger a new deadline. Well, the Zwieband case that they cite actually involved a scenario where the mandate amended the government's position in the case. And so, the court found . . . the D.C. Circuit Court found that that amendment through the mandate actually was an amendment that would trigger the ability to request a jury demand under 38B. The mandate didn't amend. Pat amended before summary judgment was granted and there was no effort between the time that summary judgment was granted and the first appeal was brought to bring the issue of . . . to raise for the trial court an opportunity to, you know, potentially allow a jury demand. I understand Appellant's position that it would have been futile, but often we do futile things in litigation because the rules simply require us to raise the issue before the trial court or we waive it. Then with respect to Rule 39, the district court did not err or act outside of its discretion because Hoover waited an additional nine months. Its motion nine months after the district court struck its jury demand, its motion included, you know, very conclusory arguments which did not explain its denial or did not explain really the reason for waiting at that point three and a half years or before that two and a half years into the whole case to demand a jury trial. It did not demonstrate the absence of prejudice to the defendants and Pat had raised in its motion to discovery was concluded, you know, witnesses had been identified in terms of who might be expert witnesses at trial and all of that was locked in for Pat at that point and would have caused prejudice if we'd moved forward with a jury trial. And then, you know, there is the suggestion that it would not have been disruptive to the court schedule and an invitation from the I would also ask the court if the court were to indulge that request that the court take judicial notice of the fact that that case had been on the court's jury trial docket for four years. You know, so the suggestion that because the court had a jury trial it wouldn't have been disruptive is just not borne out. The court had been trying to schedule that jury trial for four and I don't think that Hoover effectively showed it wouldn't have been disruptive. This court has repeatedly recognized that it's not an abuse of discretion to deny a motion to a request for a jury trial under Rule 39 when there's no explanation for the inadvertence of counsel and I think that this is a clear case of that. Now, with respect to the sufficiency issues raised in the case, you know, Hoover in effect suggests the district court had to believe Alex Hoover's testimony and that Alex's self-serving testimony that it was his intent that the confidentiality agreement protect Hoover's ideas without the need to mark anything as confidential was the only evidence in the case. But it wasn't. The record simply does not support Hoover's claims about the evidence at trial or the effect of the testimony and the district court made multiple findings of fact and conclusions of law that are based on and supported by that evidence. The district court's findings of fact need to just only need to supply a clear basis for the conclusions of law. The idea that the district court was required to to make minute findings and to explain I chose to believe this person over this person is simply not supported by how this court typically reviews findings of fact and conclusions of law from a bench trial. All you need to know is was there evidence that supported what the court found in terms of the findings of fact and then do those support the ultimate legal determinations that were made? And I submit they do. Brian Maynay testified that he was unsure of what Hoover intended with respect to confidentiality and that he was unaware of Hoover's intention to consider all materials and documents exchanged between them as confidential without going through the step of indicating that they were confidential by marking them or otherwise orally indicating confidentiality. And if the court were to look to the record there's a discussion about a kit and demonstration early in 2014 when these parties are are entering into their agreement to to move forward with the creation of this new um this new product that HAT is going to sell and I say new product it's a product that exists on the market a power beam it looks kind of like a hurdle um it's electrified a track and field hurdle but um at the point that they are doing this um Hoover has a demonstration of some some kind of different uh cubicle panel system and he says before he'll present it that it's confidential and he requires he requires the defendants to sign this confidentiality agreement. Okay and then later with respect to you know so there's a clear indication at that point that he intends the kit and the demonstration to be confidential but later Hoover sends the prototype to a third-party painter without without having a confidentiality agreement he sends it to our folks they let their people they let their people and they let customer potential customers and distributors look at it and they tell Hoover this Hoover doesn't say say anything and in fact incorporate some of those suggestions into the the idea that everything that they exchanged would be confidential was simply inconsistent with what they were trying to do which was bring a product to market for HAT that was similar to other products in the market and would expand HAT's office furniture offerings and all of those facts support a course of performance and the and an intent of the parties to indicate to each other that some material was confidential the fact that Alex Hoover did not do that with respect to the prototype means that HAT did not breach the contract and so there were findings of fact in the district court to support that course of performance there are findings of fact in the district court to support that interpretive intent and ultimately the determination that there was no breach of contract and to the extent there was any technical non-compliance Hoover's own conduct as as found by the district court supported defenses of waiver and ratification turning to the third issue which is the the trade secret um whether the court whether the district court's findings of fact and the conclusions of law with respect to the trade secret claim are supported by the evidence again considering the evidence and the testimony I've just discussed and the testimony outlined in our brief in the light most favorable to the judgment I don't think the court can say this court can say that the facts and inferences point only to Hoover's version of the events there were plenty of facts and testimony and documentary evidence that this power beam or similar power beam products existed on the market that HAT brought the notion of creating one of these to Hoover that they collaborated on it um and that that Hoover incorporated a number of ideas from outside third parties into into the power beam that was ultimately developed Judge Cummings as the fact finder was best positioned to evaluate the credibility of all of that evidence and to determine that there was no nothing secret nothing trade secret about what um about what was created uh your honors I have I have several minutes left but if there are no questions I won't I won't belabor the points in our brief and I will just commend those to you um with respect to the remaining issues in the case I guess we have no more questions thank you okay okay your honor so just for these reasons we asked you to affirm the district court thank you okay Mr. Gilbreth thank you your honors um I have deluded myself into thinking that I say colloquially we um write better than I talk so I will be brief and hope that my briefs are more persuasive than what I have to say here today but um the first point I want to address is that um opposing counsel argued that a waiver and ratification were in the case because somehow we had to prove well as a part of our burden to prove the secrecy of our product well the waiver and ratification are called affirmative defenses that means the burden of proof is on the defendant that means the burden of proof is not on the plaintiff and so we did not have the burden to show that we didn't waive or ratify so those issues were not in the case it's just by the fundamental nature of what an affirmative defense is well you know it seems to me from the outset when you're evaluating your client's case you had to have contemplated that uh you could not obtain summary judgment on this contract contemplated yes I mean no you must have I mean they moved for summary judgment but not your side and your side was seeking all these equitable remedies and it seems to me you must have contemplated the uh possibility that there were just going to be disputed issues of fact in regard to the contract interpretation and most lawyers at that point it seems to me would automatically put a original complaint because of that contemplation and that seems to me to be also fortified by the fact that that um in order to prove the strength of your confidentiality you also had to fend off the idea that your client was sending this prototype beam out to all sorts of people without specific protection yes let me respond in two ways your honor so the first point that you made goes to our rule 39a request it does not and I understand the point the court is making it does not address our rule 39 or pardon rule 38 request for a trial on the affirmative defenses and next your second point does go to rule 38 I think and I just don't think that the case law supports the notion that and if a defendant pleads two new affirmative defenses and they say they're based on new evidence that we had to sort of speculate that well this might come into the case at some point well she says they mentioned waiver in their response in state court I can't verify that but I believe her I don't dispute her so um that's and that's one point in their favor I suppose but I think that I think we start over again why didn't they bring it up in the federal court seems to me if you uh drop an affirmative defense in your second pleading then you've dropped it and you don't believe in it anymore so I think that's probably the better way of looking at it but um oh and I think she said that they raised it in their motion for summary judgment but they hadn't been granted leave to raise those affirmative or plead those affirmative defenses at that point and we objected and said you can't base summary judgment on waiver or ratification because they the court denied their attempt to plead those another quick point is that Hoover I mean Hatt's counsel argued that there was evidence presented in the case about the intentions of the parties I don't disagree there there was but that's not what the district court based its decision on conclusions of law 9 through 14 irrefutable you know they refute that beyond any doubt that the court just reapplied the rules of construction and didn't base its decision on the intent of the party so that means you got to have a new trial on that issue and waiver and ratification can't be the basis for a harmless error finding because we would suggest to the court that you just you know we were just flat entitled to a jury trial on those defenses if nothing else I think it's just too big of a reach too long far of a bridge to cross to say that those were somehow in the case and we should have speculated or anticipated they might pop up at the last minute so I will wrap up my remarks unless there are any further questions okay thank you very much thank you your honors